UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **CRIMINAL COMPLAINT** |
| v. | : | |
| BADAWY M. BADAWY | : | Mag. No. 13-7010 (CLW) |

I, James D. Boazzo, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about the dates set forth on Attachment A, in the District of New Jersey, the defendant, BADAWY M. BADAWY:

SEE ATTACHMENT A

In violation of Title 18, United States Code, Section 1347.

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached page and made a part hereof.

James D. Boazzo, Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,

January 14, 2013                     at        Newark, New Jersey
Date                                             City and State

HONORABLE CATHY L. WALDOR
UNITED STATES MAGISTRATE JUDGE                  Signature of Judicial Officer

## ATTACHMENT A

From in or about January, 2004, through in or about December, 2008, in Hudson County, in the District of New Jersey, and elsewhere, the defendant,

BADAWY M. BADAWY,

did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program, namely, Medicaid, in connection with the delivery of or payment for health care benefits, items, and services.

In violation of Title 18, United States Code, Section 1347.

**ATTACHMENT B**

I, James D. Boazzo, a Special Agent with the Federal Bureau of Investigation, having participated in an investigation and having spoken with other individuals, have knowledge of the following facts:

1. At all times relevant to this Complaint:

*The Defendant*

    a. The defendant, Badawy M. Badawy, M.D. ("defendant BADAWY"), resided in Bayonne, New Jersey and was a licensed pediatrician. Defendant BADAWY operated Sinai Medical Center of Jersey City, LLC, a medical practice focusing primarily on pediatrics and family medicine.

*Medicaid*

    b. The Medicaid Program ("Medicaid") was a jointly funded, federal-state health insurance program that provided certain health benefits to the disabled, as well as to individuals and families with low incomes and resources. The federal government provided matching funds to Medicaid and ensured that states complied with minimum standards in the administration of the program.

    c. In New Jersey, Medicaid was administered by the New Jersey Department of Human Services. Medicaid recipients were required to select a State-approved health maintenance organization for the provision of their health care services.

    d. AmeriChoice of New Jersey, Inc. ("AmeriChoice"), a business of UnitedHealth Group, was a New Jersey managed care organization ("MCO") that provided insurance services to the State's Medicaid recipients. Medicaid patients enrolled in AmeriChoice, which managed their health care using Medicaid funds. Accordingly, AmeriChoice was a health care plan, affecting commerce, under which medical benefits, items, and services were provided to individuals.

    e. Centene Corp. ("Centene"), Health Net, Horizon NJ Health, and Amerigroup Corp. ("Amerigroup") were and/or operated MCOs that provided insurance services to the State's Medicaid recipients. These MCOs were health care plans, affecting commerce, under which medical benefits, items, and services were provided to individuals.

*Current Procedural Terminology ("CPT") Codes*

   f. The American Medical Association maintained a set of procedural billing codes called Current Procedural Terminology ("CPT") codes. These CPT codes described medical, surgical, and diagnostic services, and they were designed to communicate uniform information about medical services and procedures for members of the health care industry, including payers for medical services, such as AmeriChoice. The Centers for Medicare and Medicaid Services and HIPAA mandated use of these CPT codes for purposes of billing.

   g. "CPT 12018" was the CPT code used to bill a procedure described as a repair of superficial wounds to the face, ears, eyelids, nose, or lips. This CPT code involved wounds over 30 centimeters in size.

   h. "CPT 12020" was the CPT code used to bill a procedure described as a treatment of a superficial wound dehiscence (i.e., the reopening of a previously closed wound) by a simple closure.

   i. "CPT 12021" was the CPT code used to bill a procedure described as a treatment of a superficial wound dehiscence by a simple closure with packing.

   j. The CPT code books instructed healthcare providers to use CPT codes 12018, 12020, and 12021 (the "Wound Repair Codes") "to designate wound closure utilizing sutures, staples, or tissue adhesives . . . either singly or in combination with each other, or in combination with adhesive strips."

   2. From in or about January, 2004, through in or about December, 2008, defendant BADAWY billed these Wound Repair Codes to Medicaid and its MCOs, such as AmeriChoice, Centene, Health Net, Horizon NJ Health, and Amerigroup, more than any other service provider in the State of New Jersey. In fact, defendant BADAWY's Wound Repair Code claims represented a strong majority of all such claims submitted to Medicaid in New Jersey during this time period: he submitted 99.4 percent of all CPT 12018 claims, 67.2 percent of all CPT 12020 claims, and 81.9 percent of all CPT 12021 claims. He was paid nearly $900,000 for these services.

   3. Of the MCOs described above, AmeriChoice received the greatest number of Wound Repair Code claims. From in or about January, 2004, through in or about June, 2008, defendant BADAWY submitted more than approximately 3,500 claims to AmeriChoice using the Wound Repair Codes for superficial wound repair services purportedly provided for children patients.

4. With very few exceptions, defendant BADAWY's patient charts for these patients who supposedly received these wound repair treatments, approximately 100 of which charts were reviewed by a government expert, reveal no entry, notation, or other evidence, such as suturing or other closing methods, to support defendant BADAWY's claims that these procedures were actually performed.

5. AmeriChoice reimbursed defendant approximately $441,394 for these claims, which represented more than half of the total amount paid by AmeriChoice for all types of services performed by defendant BADAWY. Some of these claims, all of which were paid using Medicaid funds, are summarized below.

*Examples of Purported Children-Patient Wound Repair Treatments*

6. From in or about April, 2004, through in or about June, 2007, defendant BADAWY purportedly treated three children, S.M., M.M., and Y.M., on approximately 28 separate occasions for a total of approximately 49 procedures involving one of the Wound Repair Codes. According to A.G., the mother of these three children, none of these children has ever had a cut that required stitches or other methods of wound closure.

7. From in or about March, 2004, through in or about May, 2008, defendant BADAWY purportedly treated two children, A.H. and S.H., on approximately 28 separate occasions for a total of approximately 52 procedures involving one of the Wound Repair Codes. According to the children's father, M.H., none of his children had any facial or other wounds repaired by defendant BADAWY.

8. From in or about July, 2005, through in or about July, 2007, defendant BADAWY purportedly performed approximately 15 wound repairs, including approximately six 30-centimeter facial wound repairs billed under CPT 12018, on a boy named M.O. on approximately eight separate occasions. According to M.O., he has never been treated for a cut to his face.

9. From in or about April, 2004, through in or about June, 2006, defendant BADAWY purportedly treated three siblings, A.K., S.K., and S.E.K., for wound repairs on dozens of occasions. Defendant BADAWY billed AmeriChoice for approximately 40 wound repair procedures supposedly performed on A.K. during approximately 24 different visits; approximately 23 procedures supposedly rendered for S.K. during approximately 12 separate visits; and approximately 36 procedures supposedly performed on S.E.K. during approximately 19 separate visits. According to the children's parents, however, none of these three children was

ever treated by defendant BADAWY for a cut.

10. From in or about March, 2006, through in or about February, 2007, defendant BADAWY submitted approximately eight claims for facial wound repairs, including approximately two 30-centimeter facial wound repairs billed under CPT 12018, on a teenager named R.A. during four different visits. According to R.A., however, he has never seen defendant BADAWY for wounds to his face or other body parts.